**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Cr. No. 19-4440 MV

NICHOLOUS PHILLIPS,

Defendant.

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States of America respectfully files this response opposing Defendant Nicholous Phillips' ("Defendant") "Motion to Dismiss Count One Claims Regarding a Firearm or a Firearm 'Frame or Receiver' and for an Order in Limine Barring the Introduction of Certain Evidence or Testimony at Trial and Memorandum in Support Thereof" (Doc. 69) ("Motion"), and as grounds therefore states:

## I. FACTUAL SUMMARY[1]

At trial, the United States will present evidence to support the following factual narrative: On the evening of November 15, 2019, as United States Probation Officers searched Defendant's backpack that was discovered behind the driver's seat of his truck, he defied commands to remain outside and instead ran inside of his residence. Once inside, he locked himself in and threatened suicide by pointing a handgun at his head. Four probation officers were present on the scene and a number of them personally observed Defendant holding a handgun.

While he remained barricaded inside of his home, Defendant spoke to law enforcement officers by phone, including a crisis negotiator from the Albuquerque Police Department. When

[1] As the United States has set forth a complete factual summary in its previous filings, *see* Docs. 35, 43, here it only sets forth the facts that form the basis for Count 1 of the Superseding Indictment (Doc. 38).

asked by that officer why Defendant made statements that he was going to kill himself, Defendant stated it was because his probation officer "just took a backpack full of fucking drugs from me." Defendant further stated that he would rather die than go back to jail, and for this reason he barricaded himself inside of his home and was going to shoot himself.

After an hours-long standoff, law enforcement safely took Defendant into custody. Officers conducted a protective sweep of Defendant's residence, which revealed a two pieces of a lower receiver for a Glock firearm in plain view. Defendant's residence was then secured pending a search warrant. Officers executed the search warrant in the early morning hours of November 16, 2019, and recovered a Glock pistol frame sawed into two pieces, two partially destroyed or melted magazines, and 26 rounds of .40 caliber ammunition. One piece of the sawed frame contained the pistol's serial number. A trace on the serial number revealed the firearm had been stolen approximately six months prior to this incident.

On May 28, 2020, a federal grand jury returned a two-count Superseding Indictment charging Defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924, and for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 38.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires, in part, that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and that each count "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed.R.Crim.P. 7(c)(1). The Tenth Circuit has explained that an indictment is "constitutionally sufficient" if three factors are met. A constitutionally sufficient indictment:

> (1) contains the essential elements of the offense intended to be charged, (2) sufficiently apprises the accused of what he must be prepared to defend against, and (3) enables the accused to plead an acquittal or conviction under the indictment as a bar to any subsequent prosecution for the same offense.

*United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962)). In *Hall*, the Court also articulated the principle that "the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *Id.* (citing *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978)). Therefore, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *Id.* (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)).

To prove a violation of 18 U.S.C. § 922(g)(1), the United States must prove the following four elements beyond a reasonable doubt:

> *First:* the defendant knowingly possessed a firearm or ammunition;
>
> *Second:* the defendant was convicted of a felony, that is, a crime punishable by imprisonment for a term exceeding one year, before he possessed the firearm or ammunition;
>
> *Third:* at the time of the possession, the defendant knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year; and
>
> *Fourth:* before the defendant possessed the firearm or ammunition, the firearm or ammunition had moved at some time from one state to another or from a foreign country to the United States.

18 U.S.C. § 922(g)(1); 10th Cir. Pattern Jury Instruction § 2.44 (2018); *Rehaif v. United States*, 139 S.Ct. 2191 (2019).

## III. ARGUMENT

### A. The Superseding Indictment is Constitutionally Sufficient and Complies with the Federal Rules of Criminal Procedure

The two-count Superseding Indictment charging Defendant with violating 18 U.S.C. §§ 922(g)(1) and 924 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) satisfies the standard set forth in the Federal Rules of Criminal Procedure and is constitutionally sufficient when judged against the *Hall* factors. Count 1, which Defendant seeks to dismiss in part, cites the statutes charged and contains each of the elements the United States must prove by tracking the language of § 922(g)(1). *See* Doc. 38. Specifically, the charging language in Count 1 states that Defendant "knowingly possessed a firearm and ammunition in and affecting interstate commerce" and did so knowing that he had been convicted of at least one felony. *Id.* By alleging that Defendant knew he was a convicted felon, this language incorporates the *Rehaif* holding that a person prohibited from possessing a firearm can be guilty of a § 922 offense if the United States proves that he was aware of his status in the prohibited class. *See generally Rehaif*, 139 S.Ct. 2191 (2019). Count 1 also lists Defendant's eight felony convictions. *Id.* Because Count 1 contains all four of the essential elements the United States must prove to establish Defendant was a felon in possession of a firearm and ammunition, in violation of § 922(g)(1), this satisfies the first *Hall* factor.

Next, Count 1 lists the date that the United States alleges Defendant's illegal conduct took place, as well as the geographic location. A plain reading permits Defendant to prepare to defend against the allegation that on or about November 15, 2019, he knowingly possessed both a firearm and ammunition in Bernalillo County, and did so while knowing he was an eight-time convicted felon. Because Count 1 sufficiently apprises Defendant of what he should be prepared to defend against at trial, this satisfies the second *Hall* factor. And finally, Count 1 is sufficiently detailed such that it protects against double jeopardy, and therefore satisfies the final *Hall* factor.

Defendant argues for partial dismissal of Count 1 on the basis that the United States has "failed to make a *prima facie* showing of essential facts that establish a violation" that he possessed a firearm. Def.'s Mot. at 1. In so arguing, Defendant entirely disregards both the rule and long established precedent governing the relief he seeks. The United States asserts that Count 1 of the Superseding Indictment complies both with the plain language of the Federal Rules of Criminal Procedure and is constitutionally sound as judged by the *Hall* standard. Consequently, there is no constitutional basis for this Court to dismiss it.

**B. Defendant's Motion Seeks Improper Pretrial Relief**

The true substance of Defendant's Motion is in fact precisely what the Federal Rules of Criminal Procedure and the Tenth Circuit forbid in a pretrial filing: it is a challenge to the United States' theory of the case and the strength, or perceived weakness, of its evidence to support the charge that Defendant possessed a firearm. Federal Rule of Criminal Procedure 12(b), which governs pretrial motions, states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine *without a trial on the merits*." *See* Fed.R.Crim.P. 12(b)(1) (emphasis added). In regards to a pretrial motion concerning an indictment, Rule 12(b)(3)(B) enumerates the challenges a defendant may raise, including: duplicity, multiplicity, lack of specificity, improper joinder, and failure to state an offense. Fed.R.Crim.P. 12(b)(3)(B)(i) – (v).

In *United States v. Pope*, 613 F.3d 1255 (10th Cir. 2010), the Tenth Circuit ruled that a similar pretrial challenge to an indictment under Rule 12 was impermissible, and in so doing, offered detailed guidance applicable to Defendant's present Motion. The Court explained that a district court has authority to resolve only those pretrial motions under Rule 12 that can be done "without a trial of the general issue." *Pope*, 613 F.3d at 1259. "General issue" means "evidence relevant to the question of guilt or innocence." *See id.*; *see also id.* at 1260-61 (listing types of

pretrial motions that do not implicate the general issue as well as those that may but are nevertheless appropriate for pretrial ruling).

Therefore, the Court held, "[i]f contested facts surrounding the commission of the offense would be of any assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Pope*, 613 F.3d at 1259. Perhaps the most prominent reason supporting this longstanding rule, the Court explained, is "respect for the role of the jury." *Id.* "Fact-finding by the district court based on evidence that goes to this question [of a defendant's guilt or innocence] can risk trespassing on territory reserved to the jury as the ultimate finder of fact in our criminal justice system." *Id.* Additionally, ruling on such a motion at this stage "disserves judicial economy" as it would require a district court to "hold a separate 'mini-trial' on a defense only to repeat the exercise with largely the same evidence a short time later at the trial itself." *Id.*

Similarly, in *Hall*, the Court explained that "the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *United States v. Hall*, 20 F.3d at 1087. It also recognized a narrow exception to this longstanding rule where a court may consider facts outside the indictment in limited circumstances where: "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, "*as a matter of law,* the government is incapable of proving its case beyond a reasonable doubt." *Pope*, 613 F.3d at 1260 (citing *Hall*, 20 F.3d at 1088).

The United States contends that Defendant's Motion is improper for pretrial ruling, as he attempts to take away from the jury evidence of a critical issue that goes directly to his guilt or innocence, and the Court should deny it on this basis.

### C. Whether Defendant Possessed a Firearm is a Ultimately a Question of Fact for the Jury to Decide

To date, the United States has provided Defendant with a complete set of discovery, including close to 600 pages of documents, hundreds of photographs, and hours of audio and video files. Therefore, it will come as no great surprise to Defendant that at trial that one of the United States' theories of this case is that Defendant possessed a complete, fully-assembled firearm, which he then attempted to destroy, before law enforcement took him into custody. On November 15, 2019, four United States Probation Officers were present at Defendant's home. A number of the probation officers will testify that Defendant defied their commands to remain outside while they searched his vehicle and instead ran inside of his home. Once inside, he locked himself in and threatened suicide by pointing a handgun to his head. The probation officers will each testify about their personal observations in this moment, including that Defendant appeared to be holding a complete firearm to his head. In addition, the United States intends to play an audio clip for the jury of one probation officer calling 911 to report her real time observation that Defendant had a gun and to report his threat that he was going to commit suicide.

Next, the United States will present testimony from the law enforcement officers who searched Defendant's home to speak about what they saw and what evidence they discovered. The jury will hear testimony that these witnesses recovered the following: a Glock pistol frame sawed into two pieces, two partially destroyed or melted magazines, and 26 rounds of .40 caliber ammunition. Further, the jury will get to examine for themselves the pieces of the Glock that the United States asserts Defendant attempted to destroy. The destroyed pieces themselves serve as proof that at a time prior to his arrest and the search of his home, Defendant possessed a fully-assembled firearm. The jury will hear from these witnesses that Defendant's home also served as a workspace and that Defendant had tools capable of destroying the firearm. Thus, a reasonable

fact-finder could conclude that the two freshly sawed pieces of the recovered Glock comprised the same fully-assembled firearm that hours before Defendant's arrest, multiple witnesses observed him pointing to his head.

And finally, the jury will hear Defendant's own words. In a series of recorded jail calls Defendant made to his girlfriend, he admits to having the "plastic part of a gun." This admission in itself is telling. On November 17, 2019, while Defendant had been in custody for less than 48 hours, he instructed his girlfriend to go to his home, find the "big, black gas can" that looks like "a big tall milk jug" and take it with her to "dump it out somewhere." The following day, on November 18, 2019, Defendant's girlfriend reported to him that the gas can was empty. On November 20, 2019, Defendant explained to his girlfriend that he would likely be sentenced to 10-15 additional years in prison because "there's 40's in the gas can you didn't fucking go get when I told you to." The jury will hear testimony that law enforcement recovered 26 rounds of .40 caliber ammunition from a large black gas can in Defendant's home, which is the precise caliber of ammunition that fits the model of Glock firearm that the United States alleges Defendant possessed. All of these facts support the United States' theory that on or about November 15, 2019, Defendant knowingly possessed a fully-assembled firearm, which he attempted to destroy prior to his arrest.

The entirety of the basis for Defendant's Motion centers around his assertion that the two recovered pieces of the Glock handgun did not constitute a "firearm" as that term is defined in federal law and under the Bureau of Alcohol, Tobacco, and Firearms regulations. However, the United States agrees with Defendant on this point and does not contend that the recovered pieces of the Glock, by themselves, independently constitute a firearm. Instead, as described above, the United States intends to introduce the two recovered pieces of the Glock for purposes of showing

the jury that they once came from a fully-assembled firearm. It is that fully-assembled firearm that constitutes the res gestae of the felon-in-possession count. The United States will further introduce evidence from one or more federal probation officers that they witnessed Defendant possessing the fully-assembled firearm on the date charged in the Superseding Indictment. Although it is not necessary for the United States to do so, it will also present evidence to the jury that will allow them to deduce how the fully-assembled Glock became disassembled. More specifically, the jury will hear evidence that Defendant himself, in the hours after the federal probation officers observed him with the gun to his head, attempted to destroy the weapon in an obvious effort to disassociate himself from it.

On top of all of that, the United States will introduce evidence that one of the pieces of the Glock had a serial number, and a trace on the serial number revealed the firearm had been stolen approximately six months prior to this incident. This fact illustrates that at one point in time, the destroyed pieces comprised a fully assembled firearm that had an owner. Taking the factual issue of whether Defendant possessed a firearm before he attempted to destroy it away from the jury's consideration at this stage on the basis of preventing the United States from pursuing a theory it does not intend to present would be improper.

## IV. CONCLUSION

The Superseding Indictment is constitutionally sufficient and complies with the Federal Rules of Criminal Procedure. Defendant's Motion is an improper pretrial challenge to the sufficiency of the United States' evidence that he possessed a firearm. Defendant may raise such a challenge at trial and after he has heard all of the United States' evidence. For now, this Court should deny his Motion in full.

                          Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

/s/ ______________________________
JAYMIE L. ROYBAL
Assistant United States Attorney
P.O. Box 607
Albuquerque, N.M. 87103
(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Joe Romero, to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on August 13, 2020.

/s/ ______________________________
Jaymie L. Roybal
Assistant United States Attorney