# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

vs.                                          No. 19-CR-4440 MV

**NICHOLOUS PHILLIPS,**

      **Defendant.**

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT ONE CLAIMS REGARDING A FIREARM OR A FIREARM "FRAME OR RECEIVER" AND FOR AN ORDER IN LIMINE BARRING THE INTRODUCTION OF CERTAIN EVIDENCE OR TESTIMONY AT TRIAL

Defendant Nicholous Phillips (Mr. Phillips), through counsel, ROMERO & WINDER, P.C. (Joe M. Romero, Jr.) in support of his Motion for an Order of this Court dismissing the case against him in the form of Count One of the Indictment—as that Count relates to the allegation that the lower portion of a Glock handgun constitutes a "receiver" as that term is used in 18 U.S.C. § 922(a)(6), states:

## ADDITIONAL RELEVANT FACTS

1. On November 15, 2020, U.S. Probation Officers went to conduct a home visit at 10012 Cochiti Road SE.

2. They encountered Mr. Phillips driving into his rental property parking lot at approximately 8:30 pm in the evening. When he exited his truck, the probation officers requested and obtained permission to search Mr. Phillips truck.

3. While he was outside, no handgun was observed on Mr. Phillip's person or later discovered in the truck. While the probation officers were searching his truck, but without seeking

permission from the probation officers who were searching the truck, Mr. Phillips went inside his apartment.

4. When he went inside the apartment, the probation officers retreated away from the front of the apartment. It is at this time, that one or more probation officers is alleged to have observed Mr. Phillips, through a door window, holding a handgun to his head.

5. The Albuquerque Police Department ("APD") responded to the scene after which an APD crisis negotiator contacted Mr. Phillips on the phone and tried to talk Mr. Phillips into coming outside and surrendering himself.

6. To keep the police from forcing their way into his apartment, Mr. Phillips told the crisis negotiator that he had a gun and would shoot himself if they tried to force their way into the apartment.

7. During the time that APD was on the scene attempting to secure Mr. Phillips surrender, other people were observed walking in or near the area of Mr. Phillips' apartment.

8. After the APD crisis negotiator was unsuccessful in securing Mr. Phillips surrender, and because Mr. Phillips had threatened only to harm himself and no weapon had been discharged, APD left the scene.

9. Approximately an hour after APD left the scene of Mr. Phillips apartment, Mr. Phillips was arrested without incident as he walked, unarmed, approximately a block from his apartment. At the time of his arrest, Mr. Phillips was unarmed.

10. A purported "protective sweep" of the apartment undertaken after Mr. Phillip's arrest is when police discovered or located two broken or scrap pieces of the polymer-plastic lower portion of a Glock-brand handgun.

11. A DNA swab of the two broken or scrap pieces of a polymer-plastic lower portion of a Glock-brand handgun located inside Mr. Phillips' apartment receivers did not match Mr. Phillips known DNA.

12. Mr. Phillips denies he was holding or possessed a handgun during his contact with the aforementioned probation officers or APD.

13. The government's expert witness has opined that the two broken or scrap pieces of a polymer-plastic lower portion of a Glock-brand handgun located inside Mr. Phillips' apartment is a "firearm" based on said parts falling under the statutory definition of a "receiver", and thus a firearm, pursuant to as defined by 18 U.S.C. § 921(a)(3)(B) and 27 C.F.R. § 479.11.

14. Conversely, Mr. Phillip's expert witness has opined that two polymer-plastic lower pieces of the Glock-brand handgun in question were never and could never be a receiver. In short, Mr. Phillip's expert contends that there is no single part of the Glock-brand handgun that meets the statutory definition of a receiver.

## **LEGAL ANALYSIS**

The government's Response goes into detail regarding witnesses who claim to have seen Mr. Phillips in possession of an actual, complete, firearm. Mr. Phillips, as indicated above, disputes such contention. Moreover, such contention is outside the scope of this Motion. Mr. Phillips does not seek a pre-trial dismissal of Count I to the extent that Count I is based on an allegation that Mr. Phillips possessed a complete firearm. Rather, Mr. Phillips seeks a dismissal of the claim that he possessed a receiver and an Order in limine barring the government from presenting testimony or argument that Defendant possessed a "receiver" and therefore possessed a firearm—even if he had not possessed a complete handgun.

In like fashion, the government argues that Mr. Phillips is alleged to have possessed ammunition. While Mr. Phillips does not agree that he knowingly possessed ammunition, that claim too is outside the scope of this Motion. Mr. Phillips does not seek, by this Motion, to dismiss the claim that he possessed ammunition.

As Mr. Phillips explained in the Motion, he requests the dismissal of Count I only to the extent that the government alleges that he possessed a "receiver" and is therefore guilty of possessing a firearm whether or not he possessed an entire firearm. As set forth in the Motion, the issue of the purported "receiver" in this case involves a misinterpretation of the law by the government, resulting from an unlawful attempt by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE") to administratively rewrite the statutory definition of a "receiver" as applied to Glock manufactured firearms. That is, Congress drafted a definition of a receiver in such a manner that the Glock-branded firearm does not have a receiver.

Thus, Count One, as alleged, ***could*** be proven if the jury believes that a whole gun was present and knowingly possessed by Mr. Phillips. It could be proven if the jury believes that Mr. Phillips knowingly possessed ammunition. But the government ***cannot*** prove Mr. Phillips possessed a firearm by pointing to the two broken or scrap pieces of the polymer-plastic lower portion of a Glock-brand handgun and calling those parts a "receiver." As a legal matter, and as explained in Mr. Phillips' Motion, the Glock-brand handgun in this case ***does not have*** a "receiver."

The Glock handgun parts at issue do not perform any of the functions set forth in 27 C.F.R. § 479.11(a): it does not contain the firing mechanism; it does not include a bolt; it does not contain a breechbolt; and it is not threaded at its forward portion. As a result, as described in Plaintiff's expert report, "[t]he part(s) in evidence, which [BATFE] has erroneously considered to be a 'frame

or receiver' since Glock began selling producing pistols in 1985…falls far short of fulfilling the CFR's definition of a 'frame or receiver.'" *Id*. In fact, since the parts of the Glock handgun in evidence—even in pristine condition—does not meet the definition of a firearm, it cannot serve as the basis for a conviction under § 922(g)(1).

As there are alternative theories of evidence by which the government may still be able to prove Count I, Mr. Phillips is not seeking the dismissal of Count I. Instead, Mr. Phillips is requesting that all evidence or testimony regarding the firearm "receiver," which was never a "receiver", be prohibited at trial. Specifically, the Court should exclude any evidence in this case related to the pieces or scrap parts that made up the portion of a Glock handgun that the government has mischaracterized as a "receiver".

WHEREFORE, for the reasons set forth herein and, in his Motion, Defendant Nicholous Phillips requests the relief specified herein.

Respectfully Submitted:

By: /s/ Joe M. Romero, Jr.
Joe M. Romero, Jr.
ROMERO & WINDER, PC
*Attorney for Plaintiffs*
P.O. Box 22543
Albuquerque, NM 87125-5543
Phone: (505) 843-9776
Fax: (505) 212-0273
joe@romeroandwinder.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 22nd day of August 2020, I filed the foregoing electronically through the CM/ECF system and served the same to opposing counsel.

By:   /s/ Joe M. Romero, Jr.
Joe M. Romero, Jr.