IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.       Cr. No. 19-4440 MV

NICHOLOUS PHILLIPS,

    Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

Methamphetamine is a pervasive threat to New Mexico communities. So, too, are firearms in the hands of convicted felons. Defendant Nicholous Phillips ("Defendant") is before this Court for sentencing for both possessing with the intent to distribute 561.73 grams of pure methamphetamine and for possessing pieces of a destroyed Glock firearm and ammunition, despite his status as an eight-time convicted felon. Defendant is not new to this Court, having been sentenced before for being a felon in possession of a firearm and ammunition. However, this time Defendant appears before the Court as an Armed Career Criminal. The United States requests that the Court accept the parties' plea agreement and sentence Defendant to the 15-year period of imprisonment under its terms.

    **I.**    **FACTUAL SUMMARY**

Defendant was convicted in this Court for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), in cause number 09-CR-3601-MV. He received a sentence of 60 months imprisonment followed by a two-year term of supervised release. *See* 09-CR-3601-MV, Doc. 52. The terms of Defendant's supervised release mandated that he was not to commit another crime, that he was not to unlawfully possess a controlled substance, and that he was not to possess a firearm or ammunition. *Id.* Another standard condition of Defendant's

supervised release mandated that he was to permit visits from his probation officer at home and elsewhere. *Id.*

On the evening of November 15, 2019, while still subject to supervised release, United States Probation Officers conducted a home visit at Defendant's newly reported home address. *See* Pre-Sentence Report ("PSR"), Doc. 99 at ¶ 10. Defendant was initially not home, and the officers returned later that evening to find him sitting in the driver's seat of his truck. *Id.* Upon unlocking and opening the truck door, the probation officer smelled a prevalent odor that appeared to be marijuana. *Id.* The probation officer then searched through the truck – behind the driver's seat, she discovered a backpack containing narcotics and paraphernalia, including methamphetamine, marijuana, lysergic acid diethylamide, suboxone strips, plastic bags, a digital scale, hypodermic needles, numerous smoking devices, and more. *Id.*

As the probation officer was searching Defendant's backpack, he defied commands to remain outside and instead ran inside of his home, locked himself in, and threatened suicide by pointing a handgun to his head while he yelled "I'm not going back, I'm not going back." *Id.* at ¶ 11. While barricaded inside of his home, Defendant spoke to law enforcement officers by phone, including a crisis negotiator from the Albuquerque Police Department. After a lengthy standoff that lasted many hours, Defendant agreed to exit his home and was subsequently arrested. *Id.*

This standoff with law enforcement required the presence of approximately 17 Albuquerque Police Department officers, in addition to federal law enforcement officers from the United States Probation Office and the Bureau of Alcohol, Tobacco, Firearms and Explosives. *Id.* at ¶¶ 11-12. A protective sweep of Defendant's home revealed two pieces of a lower receiver for a Glock firearm in plain view. *Id.* at ¶ 12. Defendant's home was then secured pending a search warrant, and the warrant was then executed in the early morning hours of November 16, 2019. *Id.*

During the search, law enforcement recovered a Glock pistol frame sawed into two pieces (one piece was bearing the serial number VZF110), two partially destroyed or melted magazines, and 26 rounds of .40 caliber ammunition. *Id.* A trace on the serial number correlated to a stolen Glock model 23, .40 caliber pistol; the trace further revealed the firearm had been stolen approximately six months prior to this incident. *Id.*

On May 28, 2020, a federal grand jury returned a two-count superseding indictment charging Defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924, and for possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Doc. 38. On October 22, 2020, the parties entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 97. On October 27, 2020, Defendant entered a guilty plea to the superseding indictment. Doc. 95.

## II.     LEGAL STANDARD

In imposing a sentence that is sufficient, but not greater than necessary, the court must consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (5) any pertinent policy statement;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

### III.     ARGUMENT

As the parties' agreement reflects, in exchange for Defendant's guilty plea to both counts in the superseding indictment, the United States has agreed to a fixed 15-year sentence. Doc. 97. Such a sentence is appropriate under the circumstances, fulfills the sentencing goals laid out in 18 U.S.C. § 3553(a), and is in the public interest. The United States encourages the Court to accept the parties' plea agreement.

### A. The nature and circumstances of the offense and the history and characteristics of the defendant

#### *1. Defendant is an Armed Career Criminal*

During pretrial litigation, Defendant sought a ruling from the Court that he would not be eligible to be sentenced under the Armed Career Criminal Act ("ACCA") if he were to be convicted of these offenses. *See* Doc. 34. The Court ruled that Defendant did in fact have three predicate felony convictions that are "crimes of violence" that therefore made him eligible to be sentenced under the Armed Career Criminal Act if convicted in the present case: (1) aggravated battery with a deadly weapon (great bodily harm), (2) aggravated assault with a deadly weapon, and (3) shooting at or from a motor vehicle. *See* Doc. 61. Therefore, the parties agree that Defendant is an Armed Career Criminal and subject to the enhanced 15-year mandatory minimum penalty under 18 U.S.C. § 924(e) and USSG §4B1.4. *See* PSR at ¶ 17.

In addition to the three felony convictions that are predicate offenses for the ACCA, Defendant has five additional felony convictions. *See id.* at ¶¶ 36-43 (detailing circumstances around prior convictions for possession of a firearm and ammunition, tampering with evidence, possession of a firearm or destructive device by a felon, possession of a controlled substance, and

trafficking a controlled substance). Defendant's history with the criminal justice system centers around narcotics, firearms, and violence.

### 2. *Nature and circumstances of the offense*

Those themes – narcotics, firearms, and the threat of violence – frame the circumstances surrounding this case. After Defendant was released from federal prison, he had a choice regarding the direction of his next chapter. He chose to fill a backpack with methamphetamine (precisely 561.73 grams) in preparation to distribute it in the Albuquerque community. Also in his backpack was lysergic acid dietylamide, suboxone strips, marijuana, packaging and distribution materials (including bags and a scale), and assorted paraphernalia. Defendant's response to the probation officers searching his backpack and discovering the contents of his drug operation was immediate and drastic, and it underscored the severity of the consequences he knew he would be facing.

Defendant barricaded himself inside of his home for hours and threatened to shoot himself because he refused to return to prison. He explained to the APD crisis negotiator that this reaction was "because my probation officer just took a backpack full of fucking drugs from me." The standoff was lengthy and tense, with law enforcement officers pleading with Defendant not to end his life.

A search of Defendant's home revealed additional items that he knew – based on his *eight* prior felony convictions – that he was expressly not permitted to possess, namely pieces of a freshly destroyed Glock firearm and ammunition.[1]

---

[1] Whether Defendant possessed a firearm has been a great source of dispute for the parties throughout this litigation In addition to Defendant's statements threatening to shoot himself, eyewitness testimony that he held a handgun to his head, and the fact that the .40 caliber ammunition matched the Glock model 23 handgun, perhaps the strongest evidence that Defendant did indeed possess a fully assembled firearm is that one of the destroyed pieces of the Glock that was recovered contained a serial number that traced back to a registered firearm that was reported stolen months prior to this incident. The United States takes note of the fact that Defendant did not object to the facts in the PSR stating, consistent with the evidence, that he did possess a firearm the evening of November 15, 2019. Therefore, the United States no longer considers this fact to be in dispute.

    **B. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant**

The last time Defendant appeared before this Court for sentencing, he was told he needed to make dramatic changes moving forward. The Court stated: "By now, I hope it's abundantly clear, Mr. Phillips, that you are never to be in possession of a firearm. That's not only the two years following your release from custody, it is forever." Transcript of February 16, 2012 Sentencing Hearing at 43, *United States v. Nicholous Phillips*, 09-CR-3601 (D. N.M.). The Court urged Defendant to treat his mental health conditions properly and warned against returning to drugs. Regarding the possibility of mixing medication with drugs or self-medicating, the Court stated: "you will present a danger at that point, and then you do not deserve anyone's leniency or understanding at that point." *Id.* at 19.

Defendant's choices to repeatedly disregard the law – and this Court's orders – that prohibited him from possessing a firearm and returning to drugs led the parties to this point. By sentencing Defendant to 15-years imprisonment, this Court has the ability to both deter Defendant from future criminal conduct and to protect the Albuquerque community – specifically from methamphetamine distribution and from multi-convicted felons possessing firearms. A 15-year sentence provides just punishment under these circumstances while sending a strong message that crimes involving methamphetamine and firearms will be punished appropriately. There can be no doubt that the Albuquerque community will be safer for the duration that Defendant is in custody.

    **C. The kinds of sentences available and the sentencing range established for this defendant**

The Armed Career Criminal Act mandates a minimum of 15 years imprisonment, with a maximum term of life, if a defendant violates 18 U.S.C. § 922(g)(1) and has three predicate

convictions for crimes of violence.  *See* 18 U.S.C. § 924(e).  A violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) mandates a minimum of 10 years imprisonment with a maximum term of life.  *See* 21 U.S.C. § 841(a)(1).  The PSR indicates that Defendant's advisory sentencing guideline range, based on offense level 36 and criminal history category VI, is 324 months to 405 months.  *See* PSR at ¶ 88.

### D.  The need to avoid sentencing disparities

According to sentencing data available from the United States Sentencing Commission, in FY 2019 the average sentence for those convicted of violation 18 U.S.C. § 922(g), and eligible for the Armed Career Criminal Act enhancement, was 188 months.[2]  The overwhelming majority, 82%, were sentenced within the guideline range.[3]  In regards to drug crimes, 52.8% of offenders convicted of a drug offense carrying a mandatory minimum faced a statutory minimum penalty of ten years.[4]  Therefore, a sentence of 15 years, or 180 months – for both of Defendant's crimes – statistically places his sentence below the average for similarly situated offenders, and well below his advisory sentencing guideline range.

### IV.  CONCLUSION

Under these circumstances, a 15-year sentence is just.  For these reasons, the United States encourages the Court to accept the parties' plea agreement and sentence Defendant accordingly.

Respectfully submitted,

FRED J. FEDERICI
Acting United States Attorney

---

[2]  *See* Quick Facts: Felon in Possession of a Firearm, United States Sentencing Commission, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY19.pdf.
[3] *Id.*
[4]  *See* Federal Drug Mandatory Minimum Penalties, United States Sentencing Commission, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/RG-drug-mm.pdf.

/s/
JAYMIE L. ROYBAL
Assistant United States Attorney
P.O. Box 607
Albuquerque, N.M. 87103
(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Joe Romero to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on February 18, 2021.

/s/
Jaymie L. Roybal
Assistant United States Attorney